## IDA RHYMER, Plaintiff

v.

## RAPHAEL RHYMER, Defendant

Family No. D193/83

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 28, 1984

---

[1] Indeed, it was the defendant who appealed this Court's decision.

ETHEL MITCHELL, ESQ., St. Thomas, V.I., *for plaintiff*

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The court is asked to decide whether it has the authority as part of a divorce to order the defendant to support two of his children who are over the age of 18. One child, 19, currently is enrolled in high school. The other is 22 and is employed full-time after halting his college education because of financial difficulties; however, he wants to complete college. The court concludes that it has authority to order support for the 19-year-old, but that it is without power, unhappily, to order the father to pay support for college for the parties' 22-year-old child.[1]

I

Ida and Raphael Rhymer were married June 21, 1961. During the course of their marriage Mrs. Rhymer gave birth to five children: Wilburn Rhymer, 22, born January 1, 1962; twin boys, Bruce and Bryan Rhymer, 20, born August 23, 1963; Wesley Rhymer, 19, born March 30, 1965, and Joy Rhymer, 15, born January 1, 1969.

Marital difficulties started several years ago, which by the defendant's own admission, were a result of his conduct. These difficulties led to a breakdown of the marital relationship and the parties separated in December of 1983.

The twin boys, Bruce and Bryan, are emancipated and self-supporting. Both currently are in the Armed Services, one stationed in Maryland and the other in Germany. The oldest son, Wilburn, was enrolled at Cheyney State University in Pennsylvania but due to financial circumstances withdrew with only three semesters remaining to complete his college education. He now is employed full-time by the Virgin Islands Department of Labor, but he wants to return to college. He cannot afford to do so, however, without the financial assistance of his father.

Wesley at the time of the hearing was 19 and in the eleventh grade at Eudora Kean High School. More than a year ago, Wesley took a job after school and on weekends to supplement the financial resources of his parents. As a result of the employment, his grades suffered and he was required to repeat the eleventh grade. He is scheduled to graduate in June of 1985. The parties' youngest child

---

[1] This case was tried on May 11, 1984. At the conclusion, the court entered its findings of fact and conclusions of law on the record. Because of the importance of the issues presented, the court reduces to writing its reasons and the rationale for its decision.

Joy, 15, is in the tenth grade. She also is at the Eudora Kean High School. There is every indication that she will attend college upon completion of high school.

## II

### A

To resolve the issues, the court first must look to the divorce laws of the Virgin Islands and Chapter 3 of Title 16 of the Virgin Islands Code, 16 V.I.C. §§ 101–111 (1983 Supp.). In a divorce, whenever a court dissolves a marriage, it may, pursuant to 16 V.I.C. § 109 (1983 Supp.), provide:

> (1) For the future care and custody of *minor children* of the marriage as it may deem just and proper, having due regard to the age and sex of such children and giving primary consideration to the needs and welfare of such children;
>
> (2) For the recovery from the party not granted care and custody of *such children* an amount of money in gross or installments, as may be just and proper for such party to contribute toward the nurture and education thereof;
>
> . . .
>
> (5) For the appointment of one or more trustees to collect, receive, expend, manage, or invest in such manner as the court shall direct, any sum of money necessary for the maintenance of the wife or the nurture and education of *minor children* committed to her . . . . (Emphasis added.)

The divorce laws of the Virgin Islands, however, do not define the term "minor children." In Chapter 9 of Title 16, entitled, "Age of Majority and Emancipation," the age of majority, as of November 29, 1972, was changed from 21 to 18. Specifically, 16 V.I.C. § 261 (1983 Supp.) now provides:

> All persons are deemed to arrive at the age of majority at the age of 18 years, and thereafter shall have control of their own actions and businesses and have all the rights and be subject to all the liabilities of persons of full age.

■■■ Reading section 109 in conjunction with section 261 might cause one to conclude that "minor children" as used in section 109 means any child under 18 and that the obligation to support terminates when a child reaches the age of 18. The legislative history of the amendment to the age-of-majority statute read in conjunction with the divorce and support-of-relations laws of the Virgin Islands,

however, causes this court to conclude otherwise. The court, therefore, holds that it retains jurisdiction to order support for the education of children up to the age of 21. In addition, the court concludes that "minor children" in the divorce laws of the Virgin Islands means children under the age of 21.

These conclusions are based primarily upon the fact that nothing in the legislative history of the 1972 act changing the age of majority from 21 to 18 demonstrates any intent on the part of the Legislature to modify the divorce or support-of-relations laws of the Virgin Islands. The legislative history does not even reveal that the Legislature ever considered the impact of the amendment on the support obligations then imposed by Virgin Islands law.

Section 261 of Title 16 of the Virgin Islands Code, which was based on the 1921 Codes, fixed the age of majority at 21 until it was amended by Act No. 3335. On November 20, 1972, the same day that the Legislature passed Bill No. 5217, which became Act No. 3335, two other bills also were approved that reduced the age for individuals to have certain rights. Passed on that day were Bill No. 5215, an amendment to 16 V.I.C. § 36 (1983 Supp.), which reduced from 21 to 18 the age at which a male could obtain a marriage license without parental consent, and Bill No. 5216, an amendment to 15 V.I.C. § 2 (1983 Supp.), which reduced from 21 to 18 the age by which persons may devise their real property by last will and testament.[2] In addition, Bill No. 5217 not only amended the age-of-majority statute, but it also amended 16 V.I.C. § 231 (1983 Supp.), which reduced from 18 to 16 the age by which a minor, with the consent of his parent or parents, may be emancipated by a decree of the district court for the purpose of administering his property.

Unfortunately, a transcript of the debate with respect to Bill Nos. 5215 and 5216 and the amendments to 16 V.I.C. § 36 and 15 V.I.C. § 2 apparently never was transcribed and is not available in the archives of the Legislature. The transcript of the debate on the amendment of the age of majority and Bill No. 5217 is available, but there is not one word that reflects any intent of the Legislature with respect to the change in the age of majority. Moreover, there is no discussion as to the impact the change was to have upon the support or divorce laws or any other laws of the Virgin Islands that fixed responsibilities, obligations and rights at the age of 21. Enactment

---

[2] Bill Nos. 5215, 5216, and 5217 were signed into law on November 29, 1972, and became Act Nos. 3333, 3334, and 3335 respectively, 1972 V.I. Sess. Laws, pp. 506–08, 685.

of Act No. 3335 and Act Nos. 3333 and 3334 reflect a desire to vest rights at an earlier age. Each of those acts was introduced in the Ninth Legislature on October 5, 1971. The introduction of those bills came shortly after passage of legislation in May of 1971 that reduced the voting age from 21 to 18.

Before enactment in November of 1972 of Act Nos. 3333, 3334, and 3335, another related bill, Bill No. 5415, was introduced in the Legislature. Bill No. 5415 was much more expansive than any of the three bills passed by the Legislature in November of 1972. Bill No. 5415 was introduced by the Special Legislative Committee on Reapportionment and Rights of Minors, but was dropped on January 5, 1973, after the amendment of the age-of-majority statute. Bill No. 5415 was entitled the "Age of Majority Act of 1972." It not only would have amended the age-of-majority statute, and the other statutes amended by Act Nos. 3333, 3334, and 3335, but it also would have brought about a sweeping change of the juvenile laws of the Virgin Islands. More importantly, however, two sections of Bill No. 5415 would have eliminated any question as to the impact of a change of the age of majority on the divorce and support laws of the Virgin Islands. Those two sections provided:

> SECTION 2. Notwithstanding any other provision of law to the contrary, a person who is 18 years of age but less than 21 years of age when this Act takes effect, and a person who attains 18 years of age thereafter, is deemed to be an adult of legal age for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights, and legal capacity as persons heretofore acquired at 21 years of age.

> SECTION 11. This act supercedes all provisions of law prescribing duties, liabilities, responsibilities, rights and legal capacity of persons 18 years of age through 20 years of age different from persons 21 years of age.

Journal of the Ninth Legislature for April 11, 1972.

Clearly, adoption of Bill No. 5415 or of language similar to that contained in sections 2 and 11 of Bill No. 5415 would have eliminated the question of the impact of a modification of the age of majority on the divorce or support laws. As the language quoted reflects, 18-year-olds would have been deemed adults for "all purposes." All "duties, liabilities, responsibilities, rights, and legal capacity" of 18-year-olds would have been changed as well as all "provisions of law prescribing duties, liabilities, responsibilities, and legal capacity of persons" 18 through 20. As stated, though, Bill No.

5415 was dropped on January 5, 1973. Again, unfortunately, there is no transcript with an explanation of this action. Consequently, the dropping of Bill No. 5415 and the enactment of Act Nos. 3333, 3334, and 3335 without provisions similar to sections 2 and 11 of Bill No. 5415 must be found to be no more than an amendment of the four specific sections of the Virgin Islands Code already cited. As the Third Circuit Court of Appeals so clearly stated in Galvan v. Hess Oil V.I. Corp., 13 V.I. 636, 649, 549 F.2d 281, 289 (3d Cir. 1977), "This piecemeal approach speaks against an intent to establish a blanket age change."

The rationale of Galvan v. Hess Oil Virgin Islands Corp., supra, lends further support to this court's conclusion that the Legislature in reducing the age of majority did not amend 16 V.I.C. § 109. Galvan involved the statutory construction of the Virgin Islands Code as it applies to third-party suits under the Workmen's Compensation Law, 24 V.I.C. § 263 (1983 Supp.). Specifically, the Third Circuit found that the change in the age of majority in 16 V.I.C. § 261 did not affect the infancy provision of the general tolling statute found in 5 V.I.C. § 36 (1967).[3] Thus, by analogy, if the infancy tolling provision of 5 V.I.C. § 36 was not affected by the lowering of the age of majority, for similar reasons, it did not affect the obligation to support children under 16 V.I.C. § 109.

■ As in Galvan, this court also must start with the presumption against amendments by implication. "If the legislature has not directly amended a statute, it is only in the rarest case that the court should rule the statute amended. See, e.g., United States v. Welden, 377 U.S. 95, 102 n.12 (1964) (amendments by implication not favored). To do so is to rule that a statute does not mean what it plainly says." 13 V.I. at 648, 549 F.2d at 288.

■ Finally, 16 V.I.C. § 109 only has been amended once since it was first enacted by the former Legislative Assembly in 1944. That amendment, which was passed in 1973, eliminated the concept of fault from the divorce laws. In no other respect since then has there been any change in section 109 and not one word in subsections 1, 2,

---

[3] Title 5 V.I.C. § 36, in pertinent part, provides:
(a) If any person entitled to bring an action mentioned in this chapter is, at the time the cause of action accrues—
(1) under the age of twenty-one years . . .
the time of such disability shall not be a part of the time limited for the commencement of the action, but the period within which the action shall be brought shall not be extended in any case longer than two years after such disability ceases.

182

and 5 as set out above (see text page 167) has been changed since enacted in 1944. Consequently, this court concludes that "minor children" as included in 16 V.I.C. § 109 means any child under the age of 21 and that Mr. and Mrs. Rhymer, therefore, are obligated to support their 19-year-old son and their 15-year-old daughter until each reaches the age of 21 or otherwise becomes emancipated.

## B

■ The court's reading of section 109 is equally applicable to the obligation of a person to support his or her relations that is imposed by Chapter 13, Subchapter I, of Title 16 of the Virgin Islands Code, 16 V.I.C. §§ 341–351 (1964). In addition, a reading of that subchapter, entitled "Civil liability for support," causes the court to conclude further that a parent has an obligation to support his or her children even beyond the age of majority where it is shown that the child is incapable of being self-sufficient.

The support-of-relations chapter, specifically section 341, makes a clear distinction between support for children who need essentials such as housing, food, and clothing and those who need support for education. That section states:

> As used in this subchapter, "support" includes all that is indispensable for maintenance, housing, clothing, and medical attention according to the social position of the family. Support also includes the education and instruction of the person supported when he is a minor.

Here, again, the court does not have available the legislative debate upon which section 341 is founded, but the rules of statutory construction require the court to find that the drafters of section 341 intended to make a distinction between necessities and education or they would not have so defined support.[4] That being so, it is clear that "support" that is for "indispensable" items or necessities is not limited to a child who is a minor as is the case of support for "education and instruction."

The court's conclusion that support for necessities can be ordered beyond the age of 21 is buttressed by case law interpreting 16 V.I.C.

---

[4] "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error. *Sutherland on Statutory Construction* § 46.06 (1973) (Citations omitted).

§ 342(a)(3), which requires "parents and children and the legitimate descendants of the latter up to 18 years of age" to support one another, and by 16 V.I.C. § 351, which provides that the obligation to support ceases "when the recipient is capable of working at a trade, profession or industry or has obtained employment or bettered his financial position so that he does not stand in need of the amount given for support."

While it has been argued that 16 V.I.C. § 342(a)(3) limits the obligation to support one's child to the age of 18, that contention was rejected in Lorillard v. Lorillard, 5 V.I. 483, 358 F.2d 172 (3rd Cir. 1966). In Lorillard, the Third Circuit said § 342(a)(3) and the clause "up to 18 years of age"

> applies only to descendants of children. The length of time that parents have the duty to support their children must, therefore, be found in other sections of the law. Among these are sections 341, 345, 349, and 351 of Title 16.[5]

Id. 5 V.I. at 492–93, 358 F.2d at 177.

Therefore, reading sections 341 and 351 together, the court is compelled to conclude, regardless of age, that a parent in the Virgin Islands has an obligation to provide support for his or her child's necessities until the child "is capable of working at a trade, profession or industry, or has obtained employment or bettered his [or her] financial position so that he [or she] does not stand in need of the amount given for support." 16 V.I.C. § 351.

■ In view of the distinction that is made in section 341 regarding support for necessities and support for education, the court must conclude, though, that it only can order support for education while a child is a "minor." That being so, for the reasons expressed in Part II A of this opinion, support for education may be ordered only until a child reaches the age of 21.

### III

■ Having concluded that there is the authority to order support for the education of children up to the age of 21 and for indispensable items other than education beyond the age of majority where a child is not self-sufficient, the court has no alternative but to con-

---

[5] Section 345 relates to the amount of support, while section 349 states that the "obligation to support terminates with the death of the person who is obliged to give it."

clude that it cannot order Mr. Rhymer to pay college costs for the parties' 22-year-old son, Wilburn.

Wilburn, although living at home with his mother, is employed full-time with the Department of Labor and is totally self-sufficient. Nothing in the testimony suggests that he lacks the capacity to support himself or that he is not emancipated. Had the Legislature used the word "children" in section 109 as opposed to "minor children," or if "support" for "education and instruction" in section 341 were not limited to minors, it then would be appropriate under the facts in this case to order the defendent-father to contribute to the support of his son and daughter until each completed his or her college education. See, e.g., Hinchey v. Hinchey, 625 P.2d 297 (Alaska 1981), overruled Dowling v. Dowling, 10 Fam. L. Rep. (BNA) 1344 (Alaska, March 30, 1984); Wilkinson v. Wilkinson, 585 P.2d 599 (Colo. App. 1978), and French v. French, 117 N.H. 696, 378 A.2d 1127 (1977). Where, however, the statute is limited, as the Virgin Islands law is, to "minor children" as opposed to "children" or "dependent children," e.g., Hinchey v. Hinchey, supra; Childers v. Childers, 89 Wash. 2d 592, 575 P.2d 201 (1978), and Wilkinson v. Wilkinson, supra, the court is compelled to conclude that it has no authority but to construe "minor children" to mean only those children who are 21 or under.

Parents should be obligated to contribute to a child's college education beyond the age of 21 where that child has shown not only the ability, but the desire and capacity to complete college. While it might pose a financial burden on a father or mother, when a parent is capable of contributing something toward a child's college education he or she should be required to do so. Strom v. Strom, 142 N.E.2d 172 (Ill. App. Ct. 1957).[6] This court, however, is without power to rewrite the law. It must, therefore, be guided by age as a factor, even though it is merely one factor that should be considered.[7]

We live in an era in which a college education has become significant and important to progress, not only of our society but for indi-

---

[6] In this instance, Mr. Rhymer says he would be more than willing to contribute to Wilburn's college education were he financially capable. In view of this court's holding that he cannot be ordered to contribute to Wilburn's college education because Wilburn is 22, the court does not decide whether, in fact, Mr. Rhymer is financially capable of making a contribution to enable Wilburn to complete college.

[7] In many jurisdictions age is prima facie evidence of emancipation, but it does not necessarily constitute emancipation. E.g. Schumm v. Schumm, 122 N.J. Super. 146, 299 A.2d 423 (1973).

vidual citizens. Moreover, given the keen sense of competition that children face in today's world, this court believes that a legislative change would not only be salutory, but should be enacted immediately so as not to limit support orders for college education solely to minors. The court, thus, urges the Legislature to modify our divorce and support of relations statutes. It should consider inserting such phrases as "dependent child" or "exceptional circumstances" or take other action so as to give this court the authority to order support that includes a college education under appropriate circumstances. See, e.g., Mich. Comp. Laws Ann. § 552.17a (1967)[8] and Price v. Price, 395 Mich. 6, 232 N.W.2d 630 (1975); Fla. Stat. Ann. § 743.07 (1984)[9] and Nicolay v. Nicolay, 387 So. 2d 500 (Fla. App. 1980), contra Gropin v. Gropin, 10 Fam. L. Rep. (BNA) 1452 (Sup. Ct. Fla. May 17, 1984); Ill. Rev. Stat. ch. 40, § 513 (1977)[10] and

---

[8] § *552.17a Same; jurisdiction of court; contempt, waiving*

The court shall have jurisdiction in making such order or decree relative to the minor children of such parties as authorized in this chapter to award custody of each such child to 1 of the parties or a third person until each such child has attained the age of 18 years *and may require the husband to pay such allowance as may be deemed proper for the support of each such child until each such child shall have attained that age and may in its discretion in case of exceptional circumstances requiring the same, require payment of such allowance for any such child after he attains that age:* Provided, That on application for modification of a decree or order where applicant is in contempt, for cause shown, the court may waive the contempt and proceed to a hearing without prejudice to applicant's rights and render a determination on the merits. As amended P.A. 1954, No. 2, § 1, eff. Aug. 13. (Emphasis added.)

[9] § *743.07 Rights, privileges, and obligations of persons 18 years of age or older*

(1) The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older, and they shall enjoy and suffer the rights, privileges and obligations of all persons 21 years of age or older except as otherwise excluded by the State Constitution immediately preceding the effective date of this section and except as otherwise provided in the Beverage Law.

(2) *This section shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years;* and any crippled child as defined in chapter 391 shall receive benefits under the provisions of said chapter until age 21, the provisions of this section to the contrary notwithstanding.

(3) This section shall operate prospectively and not retrospectively, and shall not affect the rights and obligations existing prior to July 1, 1973.

Laws 1973, c. 73-21, §§ 2, 3, eff. July 1, 1973. Amended by Laws 1980 c. 80-74, § 5, eff. Oct. 1, 1980. (Emphasis added.)

[10] § *513. Support for non-minor children and educational expenses*

The court may award sums of money out of the property and income of either or both parties for the support of the child or children of the parties who have attained majority and are not otherwise emancipated only when such child is mentally or physically disabled; and the application therefor may be made before or after such child has attained majority age. *The court also may make such pro-*

Marriage of Raski, 64 Ill. App. 3d 629, 381 N.E. 2d 744 (1978), and Ind. Code Ann. § 381-11.512(d) (West 1979) and Olson v. Olson, 445 N.E.2d 1386, 1388 (Ct. App. Ind. 1981).[11] See also R. Washburn, Post-Majority Support: Oh Dad, Poor Dad, 44 Temple L.Q. 319 (1971).

As the Supreme Court of Mississippi said as long ago as 1960:

> A contrary view may have been justified in former times when the needs of the family, and of society, and of government were less exacting than they are today. But we are living today in an age of keen competition, and if the children of today who are to be the citizens of tomorrow are to take their rightful place in a complex order of society and government, and discharge the duties of citizenship as well as meet with success the responsibilities devolving upon upon them in their relations with their fellow man, the church, the state and nation, it must be recognized that their parents owe them the duty to the extent of their financial capacity to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship. It is a duty which the parent not only owes to his child, but to the state as well, since the stability of our government must depend upon a well-equipped, a well-trained, and well-educated citizenship. We can see no good reason why this duty should not extend to a college education. . . . The fact is that the importance of a college education is being more and more recognized in matters of commerce,

---

vision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:
    (a) The financial resources of both parents.
    (b) The standard of living the child would have enjoyed had the marriage not been dissolved.
    (c) The financial resources of the child.
P.A. 80–923 § 513, eff. Oct. 1, 1977. (Emphasis added.)

[11] (d) The duty to support a child under this chapter ceases when the child reaches his twenty-first (21st) birthday unless:
    (1) The child is emancipated prior to his twenty-first (21st) birthday in which case the child support, except for educational needs, terminates at the time of emancipation; however, an order for educational needs may continue in effect until further order of the court; or
    (2) the child is incapacitated in which case the child support continues during the incapacity or until further order of this court. I.C. 31-1-11.5-12(d) (1979)
(West Ann. Code 1979) (hereinafter section 12(d)) (Emphasis added.)

society, government, and all human relations, and the college graduate is being more and more preferred over those who are not so fortunate. No parent should subject his worthy child to this disadvantage if he has the financial capacity to avoid it.

Pass v. Pass, 118 So. 2d 769, 773 (Miss. 1960).

## IV

Mindful that its construction of 16 V.I.C. § 109 and 16 V.I.C. §§ 341–351 may be subject to dispute, the court believes that support for the parties' 19-year-old child Wesley can be ordered on still another basis and even if "minor children" in section 109 is read in conjunction with 16 V.I.C. § 261 to mean only children 18 and under.

Historically there has been an exception to terminating the obligation to support majority-aged children where such children are incapable of earning a living because of physical or mental deficiencies. E.g., Verna v. Verna, 288 Pa. Super. 511, 432 A.2d 630 (1981); Marriage of Raski, 64 Ill. App. 3d 629, 381 N.E.2d 744 (1978), and Levy v. Levy, 53 Cal. Rptr. 790 (Cal. Dist. Ct. App. 1966).[12] Such an obligation also is present in the Virgin Islands in the support-of-relations chapter referred to earlier, particularly 16 V.I.C. § 341 and § 351. Generally, the cases that hold that a parent has a duty to support a child beyond majority are limited to those instances where the child is physically or mentally incapable of being self-sufficient. Today, however, this court believes it need not, nor should it, limit the obligation of a parent to support his or her children solely to those circumstances.

Here, as pointed out, Wesley at 19, is in the eleventh grade. Had he not taken a job to supplement available financial resources, there is every reason to believe that he would have graduated this year. However, because of a desire to supplement the family income and to have additional resources, his grades suffered and he was required to repeat the eleventh grade.

There are numerous cases that have held a parent has a duty to support a child beyond majority, including a college education. E.g., Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1972), and Vinson v. Vinson, 628 S.W.2d 376 (Mo. App. 1982). Consequently, where a child has the wherewithal, capacity, ability, and desire to finish high school, the sins of divorce should not be inflicted upon that

---

[12] Even after a child becomes emancipated by virtue of reaching his majority, he may become dependent by virtue of a subsequent disability. Stern v. Stern, 10 Fam. L. Rep. (BNA) 382 (Md. Ct. Spec. App. April 5, 1984).

child. If a parent can be ordered to support majority-aged-children through college, then surely the rationale of such cases has even greater force with respect to requiring a parent to support his or her child through high school.

The importance of an education as the Supreme Court of Mississippi stated in Pass v. Pass, supra, cannot be overstated, particularly a high school education. Can anyone seriously question the necessity of the acquisition of a high school diploma where one has the capacity to obtain it? True, Wesley has indicated his ability to obtain a job and probably to support himself. However, but for this divorce, it could not be said that Mr. and Mrs. Rhymer would not have supported Wesley through high school. The divorce of the Rhymers, therefore, should not be allowed to inflict upon their children such devastating effects. As stated, Virgin Islands law, pursuant to 16 V.I.C. § 341 and § 351, requires a parent to supply his or her child necessary or indispensable items such as maintenance, housing, clothing, and medical attention when the child is not self-sufficient. That duty also was imposed at common law. See, e.g., Esteb v. Esteb, 138 Wash. 174, 244 P. 264 (1926).

Today, as pointed out, many courts have gone even further and have held that a college education is a necessity. The determining factors have been the child's needs, abilities, desires, and prospects and the mother's and the father's ability to pay. See R. Washburn, Post-Majority Support: Oh Dad, Poor Dad, supra; Comment, Is a College Education Necessary? 31 Miss. L.J. 285 (1960), and 32 Notre Dame Law. 573 (1960). The rationale behind such decisions is that in today's world of complex issues and advanced technology a college education is necessary for a meaningful and useful life. If that is so, can it be any less with respect to a high school education?

As stated earlier, 16 V.I.C. § 109(2) requires a parent who is not granted care and custody of a minor child to pay such amounts of money as may be just and proper for the "nurture and education" of such children. In addition, 16 V.I.C. § 342(a)(3) imposes a duty to support children, and under 16 V.I.C. § 342(c) that duty includes "those expenses necessary for the elementary education *and teaching of a profession or trade*." (Emphasis added.) Section 342 was written in 1921 when the teaching of a profession or trade was the equivalent of a vocational education and was virtually synonymous with what now is considered a high school or secondary education. Thus, under the support statutes of the Virgin Islands, there is a duty of a parent to provide, at a minimum, a high school education

for his or her children where such children have the capacity of obtaining it.

■ Consequently, even if 16 V.I.C. § 109 is read to mean that a noncustodial parent only may be ordered to support a child up to the age of 18, then 16 V.I.C. §§ 341, 342(a)(3) and (c) impose an obligation to support a child who is physically and mentally incapable of being self-sufficient. In this case that means that obligation must also include a 19-year-old who has yet to obtain his high school diploma, but who is capable of doing so with appropriate assistance.

## CONCLUSION

Accordingly, the court holds that under the Virgin Islands divorce law, 16 V.I.C. § 109, a parent is obligated to support his or her child until that child reaches the age of 21. In addition, pursuant to 16 V.I.C. §§ 341–351, the obligation to support a child may continue beyond the age of 21 for the indispensable items of life where a child is not self-sufficient. A parent's obligation to provide support for "education and instruction," however, ceases when a child reaches the age of 21. Finally, in the alternative, the court holds that even if the age of majority is said to be 18 a parent, pursuant to 16 V.I.C. §§ 109 and 342(a)(3) and (c), has an obligation to support his or her child beyond the age of 18 if support is necessary to enable that child to complete his or her high school education.